UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEONTE SMITH,

                  Plaintiff,                        Case No. 2:21-cv-168

v.                                            Honorable Janet T. Neff

HEIDI WASHINGTON et al.,

                  Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full filing fee.[1]  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] Plaintiff filed a motion to proceed *in forma pauperis* (ECF No. 2) at the time he filed his complaint.  The motion, however, did not include all of the documents required to proceed *in forma pauperis*.  The Court therefore issued a deficiency order on July 30, 2020 (ECF No. 4), directing Plaintiff to either submit the required documents or pay the $402 filing fee in full within 28 days.  In response, Plaintiff paid the full filing fee.  Plaintiff's motion to proceed *in forma pauperis* will, therefore, be denied as moot.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility and the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.   Plaintiff sues MDOC Director Heidi Washington, MDOC Deputy Director Jeremy Bush, KCF Warden Michael A. Brown, and MBP Warden Erica Huss.

Plaintiff alleges that, at the time of the incidents in issue, he was housed at KCF. He asserts that Defendants acted willfully, wantonly, and maliciously by placing Plaintiff at risk of contracting COVID-19 when they transferred one or more prisoners from MBP, where a COVID-19 outbreak was occurring, to KCF sometime between October 17 and November 16, 2020, when Defendants knew or should have known such prisoners were COVID-19-positive.[2] Plaintiff contends that Defendants should have sent COVID-19-positive prisoners to a step-down facility, rather than to KCF.  Plaintiff attaches the affidavit of one transferred prisoner, Thomas Curtis, who states that, upon his arrival, he advised Defendant Brown that he had tested positive. (Curtis Aff., ECF No. 1-1, PageID.10.)  Prisoner Curtis reports that Defendant Brown replied that he had not realized that any of the transferred prisoners had tested positive, but, if that was determined to be true, such prisoners would be transferred to a step-down facility.  Prisoner Curtis was not transferred, but was instead released into the general population and subsequently placed

---

[2] Plaintiff provides no dates in the body of his complaint.  However, Plaintiff attaches prisoner Curtis' COVID-19 test report, which was signed on October 17, 2020.  (Attach. to Curtis Aff., ECF No. 1-1, PageID.13.)  Plaintiff also attaches a letter he mailed to Defendant Brown, in which he states that a sample taken from him on November 16, 2020, tested positive for COVID-19.  The transfer from MBP to KCF, therefore, must have occurred between October 17 and November 16, 2020.

into the gym area, where approximately 80 prisoners who had tested negative were separated from those who had tested positive.  (*Id.*)  Plaintiff contends that, as a result of MBP prisoners being transferred into KCF, he tested positive for COVID-19 on November 16, 2020.  (*See* Pl.'s Jan. 7, 2021, Letter to Defendant Brown, ECF No. 1-2, PageID.16.)

Notwithstanding his repeated assertions that Defendants acted willfully, wantonly, and egregiously, Plaintiff simultaneously alleges only that Defendant Brown "knew or should have known that the prisoners transferred from (MBP) had previously tested positive, for COVID-19, as the test results were part of their medical records[.]"  (Compl., ECF No. 1, PageID.3.)  Plaintiff asserts that the transfer of COVID-19-positive prisoners from MBP to KCF was the proximate cause of him contracting the disease and that the actions or inactions of Defendants Washington, Bush, Brown and Huss

> were tantamount to directly participating in the denial of [P]laintiff's right, where they were the ultimate decision makers, who implicitly authorized, approved or knowingly acquiesced by tacit agreement, when they allowed the [p]ositive COVID-19 prisoners to be transferred from a facility on outbreak status, placing Plaintiff at great risk and substantial harm by exposing hi[m] to the COVID-19 virus.

(*Id.*, PageID.3–4.)  He also alleges that Defendants failed to "tak[e] the necessary precautions to prevent plaintiff's exposure to the COVID-19 virus[.]"  (*Id.*, PageID.4.)

Plaintiff seeks declaratory and injunctive relief, including a limitation on the number of prisoners housed at KCF, together with compensatory and punitive damages.

## II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

A.      **Objective Prong**

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

The Sixth Circuit has determined that a plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus, certainly at least with respect to medically vulnerable inmates per *Wilson*, and possibly with respect to inmates who are not otherwise medically vulnerable. Plaintiff does not allege that he is medically vulnerable; but he does allege conditions that could facilitate COVID-19 transmission within the prison. The Court therefore concludes that at this stage of the proceedings Plaintiff alleges facts sufficient to satisfy the objective prong of the deliberate indifference test.

B.      **Subjective Prong**

Notwithstanding Plaintiff's plausible allegations regarding the objective prong, he

fails to allege facts sufficient to satisfy the subjective prong of the deliberate indifference test.

The Sixth Circuit went on in *Wilson* to address the subjective prong of an Eighth

Amendment claim, noting that the pertinent question was whether the BOP's actions demonstrated

deliberate indifference to the serious risk of harm posed by COVID-19 in the prison.

> There is no question that the BOP was aware of and understood the potential risk of serious harm to inmates at Elkton through exposure to the COVID-19 virus. As of April 22, fifty-nine inmates and forty-six staff members tested positive for COVID-19, and six inmates had died. "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). The BOP acknowledged the risk from COVID-19 and implemented a six-phase plan to mitigate the risk of COVID-19 spreading at Elkton.
>
> The key inquiry is whether the BOP "responded reasonably to th[is] risk." *Farmer*, 511 U.S. at 844. The BOP contends that it has acted "assiduously to protect inmates from the risks of COVID-19, to the extent possible." CA6 R. 35, Appellant Br., PageID 42. These actions include
>
>> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.
>
> *Id.* at 42–43.
>
> The BOP argues that these actions show it has responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment. We agree.
>
> Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844. The BOP implemented a six-phase action plan to reduce the risk

7

of COVID-19 spread at Elkton.  Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks.  The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing.  The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.* at 840–41.

In its decision, the Sixth Circuit recognized that other Sixth Circuit decisions have found similar responses by prison officials and medical personnel, such as cleaning cells, quarantining infected inmates, and distributing information about a disease in an effort to prevent spread, to be reasonable.  *Id.* at 841 (citing *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448–49 (6th Cir. 2014); *Harrison v. Ash*, 539 F.3d 510, 519–20 (6th Cir. 2008); *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018)). The *Wilson* Court also noted that other circuits had concluded that similar actions by prison officials demonstrated a reasonable response to the risk posed by COVID-19:

In *Swain* [*v. Junior*], the Eleventh Circuit granted a stay of a preliminary injunction pending appeal on state inmates' Eighth Amendment claims.  958 F.3d [1081,] 1085 [(11th Cir. 2020) (per curiam)].  The Eleventh Circuit held that "the inability to take a positive action likely does not constitute 'a state of mind more blameworthy than negligence,'" and "the evidence supports that [Metro West Detention Center ("MWDC") is] taking the risk of COVID-19 seriously."  *Id.* at 1088–90 (citation omitted).  In response to the pandemic in early March, MWDC began "cancelling inmate visitation; screening arrestees, inmates, and staff; and advising staff of use of protective equipment and sanitation practices" and, after reviewing further CDC guidance, began "daily temperature screenings of all persons entering Metro West, establish[ed] a 'COVID-19 Incident Command Center and Response Line' to track testing and identify close contacts with the virus, develop[ed] a social hygiene campaign, and mandate[d] that staff and inmates wear protective masks at all times." *Id.* at 1085–86.  The Eleventh Circuit held that, because MWDC "adopted extensive safety measures such as increasing screening, providing protective equipment, adopting [physical] distancing when possible, quarantining symptomatic inmates, and enhancing cleaning procedures," MWDC's actions likely did not amount to deliberate indifference.  *Id.* at 1090.

8

Similarly, the Fifth Circuit granted stays of two preliminary injunctions in *Valentine* [*v. Collier*, 956 F.3d 797 (5th Cir. 2020) (per curiam),] and *Marlowe* [*v. LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)]. In *Valentine*, inmates at Texas's Wallace Pack Unit filed a class action suit against the Texas Department of Criminal Justice ("TDCJ") alleging violations of the Eighth Amendment.  956 F.3d at 799.  In response to the COVID-19 pandemic, TDCJ had taken preventative measures such as providing "access to soap, tissues, gloves, [and] masks," implementing "regular cleaning," "quarantin[ing] of new prisoners," and ensuring "[physical] distancing during transport." *Id.* at 802.  The Fifth Circuit determined that the district court applied the wrong legal standard by "collaps[ing] the objective and subjective components of the Eighth Amendment inquiry" by "treating inadequate measures as dispositive of the Defendants' mental state" under the subjective prong and held that "accounting for the protective measures TDCJ has taken" the plaintiffs had not shown deliberate indifference. *Id.* at 802–03.  In *Marlow*e, the Fifth Circuit relied on its reasoning in *Valentine* and again reiterated that there was "little basis for concluding that [the correctional center's] mitigation efforts," which included "providing prisoners with disinfectant spray and two cloth masks[,] . . . limiting the number of prisoners in the infirmary lobby[,] and painting markers on walkways to promote [physical] distancing," were insufficient.  2020 WL 2043425, at *2–3.

*Wilson*, 961 F.3d at 841–42.

After reviewing the cases, the *Wilson* Court held that even if the BOP's response to COVID-19 was inadequate, it took many affirmative actions, not only to treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19.  The Court held that because the BOP had neither disregarded a known risk nor failed to take steps to address the risk, it did not act with deliberate indifference in violation of the Eighth Amendment. *Id.* at 843–44.

In addition, in *Cameron v. Bouchard,* 818 F. App'x 393 (6th Cir. 2020), the Court relied on *Wilson* to find that pretrial detainees in the Oakland County Jail were unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims.  The plaintiffs in *Cameron* claimed that jail officials were deliberately indifferent to the substantial risk of harm posed by COVID-19 at the jail.  The district court initially granted a preliminary injunction requiring the defendants to "(1) provide all [j]ail inmates with access to certain protective measures and medical

care intended to limit exposure, limit transmission, and/or treat COVID-19, and (2) provide the district court and Plaintiffs' counsel with a list of medically vulnerable inmates within three business days." *Id.* at 394. However, following the decision in *Wilson*, the Court granted the defendants' renewed emergency motion to stay the preliminary injunction, finding that the preventative measures taken by the defendants were similar to those taken by officials in *Wilson* and, thus, were a reasonable response to the threat posed by COVID-19 to the plaintiffs. *Id.* at 395. Subsequently, in an unpublished opinion issued on July 9, 2020, the Sixth Circuit vacated the injunction. *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020).

Plaintiff appears to contend that Defendants Washington, Bush, and Huss violated the Eighth Amendment when they authorized or permitted prisoners from MBP to be transferred to KCF when they knew or should have known that some of those prisoners had tested positive for COVID-19 or were likely exposed to the virus at MBP. He also appears to suggest that Defendant Brown, as Warden at KCF, knew or should have known that the prisoners from MBP had previously tested positive because the test results were part of their medical records and because those prisoners received medical screening as part of the intake process at KCF. According to Plaintiff, Defendants' failure to transfer these prisoners to a step-down facility "was the proximate cause of [P]laintiff being infected with the COVID-19 virus." (Compl., ECF No. 1, PageID.3.)

The Court notes that the MDOC issued a COVID-19 Director's Office Memorandum (DOM) on April 8, 2020, and issued multiple revised DOMs on the subject to limit the threat posed by COVID-19.[3] *See* MDOC DOM 2020-30 (eff. Apr. 8, 2020) (mandating

---

[3] The Court takes judicial notice of these facts under Rule 201 of the Federal Rules of Evidence. The accuracy of the source regarding this specific information "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also* Paul F. Rothstein, *Federal Rules of Evidence* 49 (3d ed. 2019) (citing *Matthews v. NFL Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) (taking judicial notice of statistics on the NFL website that the plaintiff played 13 games in California over 19 years); *Victaulic Co. v. Tieman*, 499 F.3d 227, 236–37 (3d. Cir. 2007), as amended (Nov. 20, 2007) (finding error where a district court took judicial notice of facts stated in "a party's . . . marketing material" on an

multiple protective measures including the wearing of masks by prisoners and staff, screening of all individuals before entering prison facilities, keeping of social distance, restricting visits and phone calls, and limiting transfers and cell moves); DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer); DOM 2020-30R3 (eff. May 27, 2020); DOM 2020-30R4 (eff. Aug. 10, 2020); DOM 2020-30R5 (eff. Aug. 25, 2020); DOM 2020-30R6 (eff. Aug. 27, 2020); DOM 2020-30R7 (eff. Nov. 5, 2020); DOM 2020-30R8 (eff. Nov. 24, 2020); DOM 2021-26 (eff. Jan. 1, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R (eff. Jan. 12, 2021); DOM 2021-26R2 (eff. Jan. 21, 2021); DOM 2021-26R3 (eff. Jan. 25, 2021); DOM 2021-26R4 (eff. Mar. 5, 2021); DOM 2021-26R5 (eff. Mar. 19, 2021); DOM 2021-26R6 (eff. Mar. 26, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R7 (eff. June 23, 2021); DOM 2021-26R8 (eff. Aug. 6, 2021); DOM 2021-26R9 (eff. Aug. 23, 2021); DOM 2021-26R10 (eff. Oct. 11, 2021); DOM 2021-26R11 (eff. Nov. 19, 2021); DOM 2021-26R12 (eff. Dec. 3, 2021). The DOMs set forth specific details about protective measures to be taken in all facilities: describing the types of PPE to be worn by staff and when; setting screening criteria for individuals entering facilities; setting social distancing requirements; establishing isolation areas and practices for isolation; setting practices for managing prisoners under investigation for COVID-19; modifying how personal property is managed; setting requirements for jail transfers; outlining communication adjustments and video visitation; upgrading hygiene, health care, and food service policies; setting protocols for COVID-19 testing of prisoners; and making other necessary

---

"unauthenticated" website because marketing materials often lack precise and candid information and the source was not authenticated)). Moreover, "[t]he court may take judicial notice at *any* stage of the proceeding." Fed. R. Evid. 201(d) (emphasis added). Thus, the Court may take judicial notice even at this early juncture because the Court is permitted to take judicial notice *sua sponte*, Fed. R. Evid. 201(c)(1), and "the fact is not subject to reasonable dispute," Fed. R. Evid. 201(b).

adjustments to practices to manage the pandemic.  Thus, the MDOC responded to the COVID-19 threat by adopting new policies and adjusting practices.  Plaintiff does not allege that these Defendants failed to take the actions outlined in the DOMs.

Clearly, the MDOC, including Defendants, has taken extensive steps to address the risk of COVID-19 to inmates statewide and at KCF.  As noted by the Sixth Circuit in *Wilson*, such actions demonstrate the opposite of a disregard of a serious health risk.  *Wilson*, 961 F.3d at 841. Moreover, Plaintiff's vague allegations that Defendants knew or should have known that the inmates transferred to KCF from MBP had previously tested positive for COVID-19 fail to state a claim.  Plaintiff fails to suggest that Defendants personally were aware that the transferred inmates had tested positive for COVID-19 when they were transferred to KCF from MBP.  He fails to allege facts that Defendants personally reviewed these inmates' medical records prior to directing their transfer to KCF.  Moreover, while Plaintiff suggests that Defendant Brown was aware that Prisoner Curtis had previously tested positive, Plaintiff's complaint suggests that Defendant Brown and other staff members at KCF took steps to quarantine those individuals, including placing them in the gym for quarantine.  In short, Plaintiff has alleged facts suggesting only the mere possibility that Defendants violated the Eighth Amendment.  His allegations therefore fail to state a claim.  *See Iqbal*, 556 U.S. at 678.

Although the Court is sympathetic to Plaintiff's concerns about the COVID-19 virus and the fact that he contracted the virus, his claims are entirely based upon speculation.  The MDOC and Defendants have promulgated numerous policies to address the risk posed to inmates by COVID-19, and Plaintiff's allegations suggest that Defendants expected their subordinates to enforce those policies.  Plaintiff has failed to allege facts demonstrating that any Defendant was deliberately indifferent to his health and safety.  At most, with the benefit of hindsight, they may

have been negligent when they transferred the prisoners from MBP to KCF instead of sending them somewhere else that would not have posed a risk to harm to Plaintiff.  Allegations of negligence, however, fall short of the deliberate indifference required to state an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").  The Court, therefore, will dismiss Plaintiff's complaint for failure to allege plausible Eighth Amendment claims against Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).  Moreover, Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) will be denied as moot given Plaintiff's payment of the full filing fee.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 1, 2022                          /s/ Janet T. Neff
                                                   Janet T. Neff
                                                   United States District Judge